Good morning, Your Honors. May it please the Court, Brian Barrow representing Joni Sequira. Ms. Sequira is the daughter of Paul Olds. Mr. Olds passed away during the pendency of the appeal. These appeals raise the priority, like the other cases we've heard this morning, of summary judgment motions that are quite similar in nature. Contrary to the Court's rulings here, though, neither Lockheed nor United Technologies or UTC were properly excused in the case. There are, in my mind, three main issues of the case that track both motions. First is just general exposure evidence. Second is military contractor. And I really would like the chance to address the Court on that. I think I can offer some assistance in that regard. And then also a third issue that was relied on in one of the motions, which is the sophisticated user-slash-intermediary doctrine, which is based on California state law. Let me address the lead issue and what I think is probably the best argument that defendants have. And even though it's their best argument, I think it still fails for lack of merit, and that's the exposure. They both, defendants here, Lockheed and United Technologies, concede that Mr. Olds was a 20-year aircraft and jet engine mechanic in the Air Force and that he worked on or around their aircraft and or engines. There's a lot of inferences to be drawn, just like in the prior case, from Mr. Olds' expertise and the length of his service and the type of work that he did. With regard to Lockheed, he testified specifically that he performed engine replacement or engine removal work, removing engines from a fuselage of Lockheed F-80s. One of the things he had to do was he literally had to put his head inside the fuselage in order to disconnect and remove an insulating blanket. Now, Lockheed admits that the blanket or at least some part that it concedes was in the area that was integrated with the exhaust and tail cone of the aircraft as containing asbestos, and that's consistent with Mr. Olds' testimony that it had a loose white stuffing in it that literally fell out onto the floor of the shop when all this work was being performed. Mr. Olds also removed accessories from engines in the F-80s that required the scraping of gaskets. It's unclear. There's a dispute, I should say, as to whether those gaskets contain asbestos. It's unclear whether they were supplied by Lockheed, but the district court excluded Mr. Thompson's declaration, which I don't think we really need here to raise tribal issues on exposure, but regardless, the point being that Mr. Olds was exposed to asbestos from the Lockheed equipment. The same is true with regard to United Technologies. Mr. Olds oversaw overhauls of the Pratt & Whitney J-75 engine and was present for the removal of insulation, gaskets, and thermocouples. Bottom line, Olds' exposures put him at increased risk of mesothelioma, which is the standard for causation under Rutherford in California. Moving on to the affirmative defenses, neither Lockheed nor United Technologies proved a boil defense. We've heard this morning that it is an affirmative defense, that it is their burden to prove it. Merely supplying a product to the military is not itself enough to prove the defense. The purpose of the defense, of course, is to insulate contractors from decisions made by the government. The government buys a lot of stuff off the shelf, but when it comes to big military equipment, it's not off the shelf stuff, this is the stuff that it specifies. Why doesn't all of this, I mean, doesn't this buy aircraft? Well, here's what I want to say about military contractor. My reading of the Snell case and Getz, and in answering your question, is that when we use the term specification or reasonably precise specification as used by Supreme Court Boyle, I think that's a term of art, and it's not specifications with regard to here's the drawing per se. It's reasonably precise specifications used in the context of military contractor defense, means was there continuous exchange or a back-and-forth communication between the contractor or the alleged contractor and the Air Force or the government agency at play, whether it's Navy, Air Force, whatever, about the specific particular design issue that is at issue in the case. It's not just... Why does it have to be a back-and-forth? Well, because they have to. Let me use the example from Boyle, and then I'll get into Snell and Getz, which are from this circuit. Boyle, there was back-and-forth exchange of the manufacturer said, we think the helicopter door should open this way. And the military said, no, no, we want the door to open the other way. And because the door opened a certain way, that's why the helicopter pilot in Boyle wasn't able to get... So there was a specific communication and interchange between the government and the military or the government and the contractor on the particular issue that is alleged to have caused the injury. There may have been the case in Boyle, but it doesn't have to be. The government just says, you're going to deliver these planes stuffed full of asbestos. Why does it have to be a dialogue back and forth? And nobody objects. Because there were options. And it was not necessarily the military saying, you know, there's no evidence that the contractor came to the military and said, as there was in Boyle, that, hey, we could do it a different way. And the military says, no, no, we want you to do it with asbestos. And particularly... So in your view, the manufacturer had to come back and object to the specifications? Not necessarily object, but discuss and have an interchange in the back-and-forth dialogue, which is referred to in Boyle, and which is what happened in Snell, and which is what happened in Getz. Why can't the contractor just say, this is what it says? Because that's not the government saying, we want you to do this particular thing that may end up causing an injury down the road. And it's not specific enough. It's a rubber stamp, basically, is what it is. And Boyle and Snell and Getz all tell us that it can't be just a rubber stamp. It has to be a specific design feature. So in our case, it would be, was there evidence that there was a continuous exchange between the military and the contractor, be it Lockheed or UTC, about the use of asbestos insulation, the use of asbestos heat shields, the use of asbestos thermocouples, the use of asbestos gaskets, the use of asbestos tadpole, all of these different things, such that there would be a... This just doesn't sound like federal contracting the way I know it. Well, exactly. Well, that's what I'm trying to explain. A contractor is obligated to talk back, say, oh, you know, plans say you're going to have 12-foot ceilings. We think 11-and-a-half-foot ceilings are better. There has to be evidence of some considered decision. That's how you get change orders, you know. And contractors, people who do contracting hate change orders because they're very expensive. Counsel, as to United, didn't the government specify the engines to be installed by United? Specify the particular engine, yes. We're not suing necessarily for the design of the engine. We're suing for the design of the use of asbestos in the engine. That's my point, is that the military contract goes down to a very... But the military clearly understood what was inside the engine they specified. I don't know that that's true. There's no evidence of that. Because the design is not coming from the government. The design comes... These are experts in designing and creating and manufacturing aircraft engine and airplanes. The government was not an expert in this. The government said, we want a plane that does this. And the contractor comes back and says, we have this, and this is what we do, and this is what we're going to build. And then the contractor then says, oh, well, we put asbestos in it, but wait a second, the government made us do it. Well, the government didn't make them do that. There's no evidence that the government made them use asbestos. They used asbestos as a default because, as Mr. Thompson says in his declaration, asbestos was widely used in aircraft during that time and in engines at that time. And so there was no... And if Your Honors look at Snell, which is from this district, and at Getz, those courts specifically analyzed the very design feature. In Snell, it was a drive shaft of a helicopter. And in Getz, it was an ignition system. And in both of those cases, there was specific evidence of a back-and-forth exchange and communication between the contractor and the military on those specific design features. And those features were the ones that caused the injury. So applying Snell and Getz here, there has to be evidence of a continuous exchange and back-and-forth dialogue about the asbestos products that are at issue in this case. And on this record, both United Technologies and Lockheed both admitted they have no evidence whatsoever. Both of their 30B6 witnesses testified in, admitted in deposition, that there was no evidence of any back-and-forth communications or dialogue with regard to asbestos, the use of asbestos in these very particular asbestos parts in these aircraft and in these jet engines. So, and the same is true with regard to the warnings issue. Warnings and design under the military contractor are separately analyzed. There is, again, no evidence that the Air Force prevented or otherwise did anything that conflicted with Lockheed's and United Technologies' state law-required duties to warn. And without that evidence, there can be no, there is no actual basis to say the government made me do it. And that is the purpose of the military contractor defense, which is a contractor is protected from decisions of the government. And there was no, there's no evidence in this record that the government actually made the specific decisions with regard to these parts. And in your view, just putting it in specifications is not enough? No, not enough. And it's not enough under Boyle or under Snell or Getz? What case says it's not enough? Boyle, Snell, and Getz. Okay, let's look at them. What specifically in Boyle says that? Boyle in particular says that it has to be reasonably precise specifications. Okay, that's fine. But where is the back and forth that you are referring to? I've got the case. Just tell me what page. Well, the best case for it is Snell. Okay. You said Boyle. Let's go to Snell. And let's see what Snell says. And I want to have your best cut at Snell. Okay, I'm getting to Snell. And you give me a page number? 748, Your Honor. Okay. 748. I would first direct Your Honor's attention to Headnote 3, which appears on 748. To what, Note 3? Headnote 3. Oh, you mean the little thing in brackets? Yes, please. Page 748. But the word says, Government approval, quote, requires more than a rubber stamp. The mere signature of a government employee on the approval line of contractors working drawings without more does not establish the governor-contractor defense. And then in the next paragraph, it looks at, and Snell, of course, was with regard to the driveshaft of the helicopter, which failed and caused the helicopter to crash, obviously. And then in the next paragraph, it goes on to say, On this record, a trier of fact could find that the government did not exercise judgment with respect to the design feature in question, which is my point, the driveshaft and its components. If the government contractor exercised the actual discretion over the defective feature of the design, then the contractor will not escape liability via the government-contractor defense, the government's rubber stamp on design drawings notwithstanding. All right. Well, I mean, it sounds to me like this is a case where the design was provided by the bidder, by the contractor. Well, of course. They always would be. The government did not design the Lockheed F-80. Lockheed designed this airplane. And it came to the government and said, We can do this. The government didn't draw up plans. Congress did not design Lockheed F-80s or the engines that went in them or the specific use of asbestos. But didn't the government set out the features that it wanted the plane to have? Performance features, perhaps. Yeah, right. But that has nothing to do with the use of asbestos. The government would have said, We want you to build an airplane that will do this, will carry this size of bombs, has this range, and will go this fast. Can you do that, Lockheed? Yes, we can. Here's our design for that proposal. And we're going to, unbeknownst probably to the government, we're going to use asbestos gaskets and insulation and all the things that were used during that time period generally in airplanes. But there's never – and here you've got, in these later cases, you've got situations where it becomes – I think the process became much more detailed. But returning to Snell, the last paragraph, though, is, We concluded the record before us does not establish as a matter of law. As a matter of law, that's the other point here, is that these folks, the defendants, are trying to show as a matter of law. I think this is all a giant jury issue. But it does not establish as a matter of law that the government approved reasonably precise specifications. That's the term of art that I'm suggesting. And that issues of fact remain on the application of the first prong of military contractor defense to the design claim. And, again, I would focus the Court's attention on Snell's use of the term design feature in question. We're not talking about the aircraft in general or the ship in general or any of these parts. We're talking about the specific feature that caused the injury. And in this case, it was asbestos. I'd like to save my remaining time for rebuttal, if I may, unless the Court has any further questions. I do. Before you sit down, I'm curious as to why you omitted a statement of issues from your brief. I didn't do it on purpose. I thought that my brief in the introduction was very clear as to what the issue was. But you didn't do it on purpose? I acknowledge that it was a – Okay, but in your reply brief, you told us that you did do it on purpose. Well, I mean, the point being that I believe that my introduction was more than sufficient to set forth the issue. In your reply brief, you told us that it was your choice to use an introduction and not to restate the obvious in a subsequent statement of issues.  It was a stylistic approach intended to make the brief as short as possible and concise as possible. Correct. That is my explanation. I mean, I didn't intend to violate a circuit rule, if that's the question. I intended to be as clear as possible with my briefing. Okay, but you did not set out a separate statement of issues. I did not. Not in that brief, no. In the next one, I did. And because it was inadvertent, because you simply forgot to, or you decided – you made a deliberate decision not to follow our rules? I was unaware of the rule at the time. I was alerted to the rule when counsel brought it to my attention, and I believe that my brief, in substance, the introduction provided an adequate statement of the issues. I believe, in essence, that the introduction complied with the rule. I realize now that it did not, that the court requires a separate statement of issues, and if there's any ambiguity or unclarity in my brief because of that, I apologize. Okay, thank you. Thank you. May it please the Court, Guy Glazier on behalf of Lockheed Martin Corporation. Lockheed Martin and United Technologies have agreed to split our time ten minutes each. Okay. With the Court's permission, I'd like to address the government contractor defense first, then I'd like to address the lack of evidence of exposure, causation, then derivative sovereign immunity, and then, if necessary, the sophisticated user defense. Here, the government went far beyond the actual specifying the use of asbestos in the Lockheed Martin F-80 aircraft. The government supplied the asbestos itself. The idea of a back-and-forth discussion is a strawman argument here. The only reason there was no back-and-forth here is that the government independently procured, independently specified, and then gave Lockheed Martin the J33 engine with its accessories, with mandatory installation instructions to place it in the F-80 aircraft. The idea of a back-and-forth discussion to determine whether or not the government approved of its own action in providing Lockheed Martin that J33 engine is ludicrous. It is about the exercise of governmental discretion. The way in which a defendant proves the exercise of governmental discretion is fairly irrelevant. If there's an issue as to whether or not the government exercised discretion, then a back-and-forth discussion, as the cases say, may elucidate that issue. But without there being any issue at all because the government simply provided the very asbestos itself, then there's no reason for a back-and-forth. The government exercised 100 percent discretion here and deprived Lockheed Martin of any discretion whatsoever up front. Lockheed manufactured the F-80, is that correct? Yes, sir. Okay, and when you say that they supplied the asbestos, I heard you say that they supplied the asbestos, and then I heard you say that they supplied the engine, so I'm a little confused. The J33 engine manufactured by Allison is the only component at issue in this case. Okay, so when you say that the government supplied the engine, was the government in possession of the J33 and brought it over to Lockheed? Yes, Your Honor. The government independently went out, contracted with a third-party supplier, in this case Allison, purchased the engine from Allison, was in possession of the Allison J33 engine, and then came to Lockheed Martin, gave Lockheed Martin the engine and said, this is the engine you're going to use in the F-80 fighter. And this is all on the record? Yes, Your Honor. Yes. Mr. Jimenez's declaration outlines this in detail. That declaration is provided by Lockheed Martin's person most knowledgeable. He is not an expert witness. He is a fact witness in this case. That declaration is completely unchallenged in the record below. And he sets forth the model specification of the F-80, which says in particular, government furnished equipment. Appellant provides the so-called expert declaration of Mr. Thompson. Can you give me the paragraph in the Jimenez declaration? I see a reference to government furnished equipment in paragraph 12. Yes. I think the first eight paragraphs or so are qualifications, and then beginning around paragraph 11 and then going forth from there. He discusses all of the government furnished equipment issues in this case and actually attaches to that declaration the model specification that sets forth what the government furnished equipment was in particular and the J-33 power plant. And the only accessory at issue in this case, the hydraulic pump and its gasket are listed as government furnished equipment. So everything at issue in this case was provided to Lockheed Martin. Help me find the reference to the J-33 engine. I don't see it in paragraph 12. I think what Mr. Jimenez provides in his declaration is a general description of what government furnished equipment is, and then he provides as an attachment to his declaration the F-80 model specification, which sets forth what the government furnished equipment is, and that lists out the J-33 engine. Okay. And where is that? You see it's in the attachment? Right, an attachment to Mr. Jimenez's declaration. Okay. Is there an ER number for that? It is. It's in the supplemental excerpts of record that Lockheed Martin attached. Do you happen to have a page? I may. I don't have the exact page, Your Honor. I have pages 189 to 205 of the supplemental excerpts of record, which are very important in this case, and that is Lockheed Martin's. But if I look to those pages, I'll find a reference to the J-33 being ordered by the military and provided to Lockheed. Yes, and I'm sorry. I gave you the wrong site. It's pages 1 to 188 of the supplemental excerpts of record, which is Lockheed Martin's. 1 to 188? 1 to 188 of the supplemental excerpts of record. So this is 188 pages? That's right.  which has with it all the references to Lockheed Martin. I'm only focusing on the J-33, which you tell us was owned by the military and then delivered and provided to Lockheed. Now maybe your assistant will help you there. Thank you. Supplemental excerpts of record, pages 388 and 483. 388 and 483. Sorry, 388 and 485. 485. All Allison manufactured J-33 engines and the engine assemblies, subassemblies, and components all provided by the government to Lockheed Martin. Both of those things are tables of things. I'm sorry, Your Honor? The pages you gave us are tables, exhibits. They're tables. They reference the government furnished equipment that is provided to the military, provided to Lockheed Martin, I'm sorry. But what are they referring to? Where do they hang in the declaration? They set forth specifically that the government provided certain equipment to Lockheed Martin to place on the aircraft. No, no, these are just lists of things. Where in the declarations are these in the Jimenez declarations are these referenced? Well, Mr. Jimenez says in his declaration that the model specification... Where? It is... Can you say the word where? Yes, Your Honor. You earlier told us about paragraph 12 of the Jimenez declaration. Is it in there? It is in paragraph 12 and his subsequent paragraphs. I don't have the exact site to his declaration, Your Honor. You prepared for this morning? I did, Your Honor, and I prepared on a lot of different... Very well. ...different topics, Your Honor. You're probably relying on line 10. Among the other equipment, these specifications required Lockheed to install government-furnished equipment into the aircraft? Yes, Your Honor. But where is that list referred to? That is in the government-furnished equipment appendix to the model specification of the F-80. I don't see the connector in his testimony, but it's probably there somewhere. Well, it's attached to his declaration. And he does... It's a long declaration, and there are parts of his declaration where he says specifically, attached here to as Exhibit... It might be M, I believe, where he says attached as Exhibit M is the model specification for the F-80. Okay. In any case, providing the actual asbestos at issue is obviously more than specifying asbestos. It is giving the asbestos to the contractor. So the question is whether or not the government exercised discretion, and of course they exercised all of the discretion. The same would apply to warnings. If the government is providing the actual product at issue, then obviously they have determined what warnings are going to go with that component. And in this case, Lockheed Martin affirmatively proves that the government provided all kinds of specifications as to warnings. I'm looking at the two pages you gave us, and where are those two pages? If you look at page 485 of the supplemental excerpts of record... All right. Could you have made it smaller? We didn't try to, Your Honor. These are old documents. Page 485 of the supplemental... I know, but you can enlarge them. You can make it easy to read. So what are we looking at here on page 485? It says, Government Furnished Equipment, at the top. And then it says, Propeller, None Required. And then it says, Power Plant. Where does it say, Government Furnished Equipment? Lockheed Aircraft Corporation, Burbank, California, and then Restricted, and then Appendix 1, I believe it is. Paren, Government Furnished Equipment. Government Furnished Equipment. You go down about a third of the way, Power Plant. Allison, Type J33A23, Complete With. Listing everything there, including the hydraulic pump and the hydraulic pump gasket, which are the only components at issue in this case. Okay. Counsel, I may have found what you haven't told us about yet. I'm looking at paragraph 27 of the Humanis statement, line 22. The single turbojet engine, GFE, that must be Government Furnished Equipment, Allison manufactured, J33 engine. For the first time I see it in the Humanis declaration, but it's in paragraph 27. It's mounted on aluminum alloy and placed in the fuselage section. What page are we at? That's 367, line 22 of paragraph 27. That's getting close. It doesn't quite tell us what we're looking for yet, but very close. Your Honor, it demonstrates that that engine was supplied by the government to Lockheed Martin and for required installation in the J33. There isn't any greater exercise of discretion than that. I don't want to cut into my co-counsel's time, so I'll retire. Thank you. Good morning. Rebecca Leffler, Ford Defendant and Pelley United Technologies Corporation. Now, with respect to what we've just been through on the government specification issue, we don't reach that if we're satisfied there's insufficient showing of causality. Is that correct? Yes, Your Honor, that's correct. And does that apply across both both defendants, or just yours, or just Lockheed? I would think it would apply to any time the government contractor defense is asserted. The government contractor defense sort of assumes that there is a defective product. So, you know, it says that a manufacturer can't be liable for a defect if the government required certain specifications. So it almost assumes that the plaintiff has made a nonetheless. Pardon me. But my question is, if we're satisfied that there was an insufficient case, no prima facie case, then we don't get to that issue. Is that correct or not? I would think that there would be no need to get to that because summary judgment would be affirmed on causation grounds. And here, there really is no need to get to the government contractor defense because there is insufficient evidence of causation. I think the most straightforward basis for this section of the case relating to Pratt & Whitney Engines is below. The plaintiffs have admitted that they haven't presented any evidence that any potential asbestos exposure that occurred here could have been a substantial factor in causing Mr. Olds' illness. He said he stuck his head in a fuselage and all this white stuff was coming out. Why isn't that enough for a jury to say, yeah, that's where he got it? Well, that was in relation... He didn't get methicillioma, right? Correct, yes. And it's not easy to get without asbestos. Well, that... There are rare instances, but you've never seen a case, right? Methicillioma not caused by asbestos. I'm willing to bet. I'm not a medical expert. I'm sorry? I'm not a medical expert, so I can't answer that. No, but you've found these cases. I'm just... Medical experts no doubt will come up with examples, but methicillioma was caused by asbestos. In general, yes. In general. But that's a question of... So if the jury hears he stuck his head in there and all this white dust was flying out and it was like nappy stuff, you've seen asbestos, right? I don't know that I have, actually. I have. But for one thing... No, I'm kidding. For one thing, the head in the fuselage thing is regarding the Lockheed jets that I believe Mr. Old said he worked on early in his career in the 1940s. And for Pratt & Whitney, we're talking about the Republic F-105s used in the Vietnam War in the late 1960s. The components for the Pratt & Whitney... He must not have stuck his head in there. No, at this point, he actually wasn't doing any hands-on work with planes. He was a supervisor, so he wasn't working with the planes hands-on. So there really isn't evidence of sufficient exposure to cause disease, and plaintiffs have admitted that they haven't submitted any evidence of substantial factor, which is a required component, is a required element under the Rutherford case under the California Supreme Court. The plaintiff has to show that he was exposed to asbestos-containing products supplied by the defendant with enough frequency and regularity so as to show a reasonable medical probability that exposure was a factor in causing the plaintiff's illness. So we have sort of a general causation issue asbestos can cause mesothelioma, but you have to have specific causation, too. You have to say that this particular exposure was sufficient to cause this particular plaintiff's illness, and the plaintiff can't make that connection between a manufacturer and his illness, and that's not sufficient on summary judgment. And here, plaintiffs tried to submit their substantial factor evidence here on appeal, admitting that it wasn't... He got the asbestos from somewhere, right? He didn't just pick up mesothelioma by having somebody sneeze in his face, right? Presumably not. If something was picked up, why can't the jury infer that he worked with this equipment that was produced by your client, that he picked it up there? He must have picked it up there, because it's just not possible to pick it up a lot of other places. Potentially he picked it up somewhere over his 20-plus career as an Air Force mechanic. That's possible. But if we're going to get into the idea that any manufacturer of asbestos is therefore liable for anyone's mesothelioma, we're sort of getting into sort of like a Sindel... No, it's a little narrower than that, although admittedly it's still somewhat broad. He has to show serious sustained contact with a piece of equipment or a building where asbestos was built in and was known to come loose. That's a little narrower than everybody in the world, right? But not much. We have sort of the bounded end that mesothelioma only, I mean, just for all practical purposes, you don't get it unless you're exposed to asbestos. Right, and that's why the exposure evidence is so important here. Well, no, maybe that's why the exposure evidence is not so important. Why isn't it sort of the opposite inference? The opposite inference is, look, he got it. You don't get mesothelioma unless you work closely with asbestos, which is usually at your job. There's no indication that he sort of inhaled asbestos recreationally or that he would have, you know. Why can't the jury say more likely than not, yes, you know, that's where he got it. He got it on the job working with the stuff that had asbestos napping out of it. Well, the California Supreme Court has created the standards. Under Rutherford, the substantial factor standard. Under O'Neill, you have to make a specific showing connecting the plaintiff's exposure to asbestos with a particular supplier. So under O'Neill, it's not enough to say, for example, you created these Pratt & Whitney engines, which initially had some asbestos in it, but some replacement part manufacturer created the new clamps or whatever had asbestos in it. Under this California Supreme Court standard in O'Neill, that's not enough. It can't be enough that just this particular manufacturer once supplied asbestos. There has to be a connection, evidentiary connection, between the supplier and the plaintiff's illness. So just assuming that, well, I mean, they supplied some asbestos, so it probably contributed. That's not enough under Rutherford and O'Neill. And I see that my time is up, so unless there's any more questions. I have one question with respect to perhaps all of these cases. We note the ads on television for claims for mesothelioma, and of course there's a federal trust fund, as I understand it. If liability is established here, will the trust fund eventually pay or is this totally unrelated to that trust fund process? I'm so sorry. I am not a full-time asbestos attorney, and I can't answer that question. Maybe you know the answer. I'm just curious about where this fits in terms of the overall congressionally approved asbestos litigation solution. With the Court's permission, Your Honor. This has nothing to do with the trust fund litigation. This is strictly a tort action against particular defendants. In some courts, in some jurisdictions, there are set-offs allowed if a plaintiff has already recovered against, say, bankrupt defendants that are involved in the trust fund. But this particular case would have nothing to do with that. Very well. Thank you. Thank you, Your Honor. I have nothing else to add that was not addressed in my brief unless the Court has any questions. Thank you. Case is signed. We will stand for a minute. We're adjourned.
judges: Kozinski, O'scannlain, Bybee